UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLADYS ROSARIO,

                              Plaintiff,

        -v-                                                        CIVIL ACTION NO.: 20 Civ. 7749 (SLC)

                                                                  **OPINION & ORDER**
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

**SARAH L. CAVE**, United States Magistrate Judge.

## I.        INTRODUCTION

Plaintiff Gladys Rosario ("Ms. Rosario") commenced this action pursuant to Section 205(g)

of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g).  Ms. Rosario seeks review

of the decision by the Commissioner (the "Commissioner") of the Social Security Administration

("SSA"), denying her application for Social Security Income ("SSI") under the Act.  Ms. Rosario

contends that the decision of the Administrative Law Judge ("ALJ") dated October 10, 2019 (the

"ALJ Decision") applied the improper legal standard, and asks the Court to reverse the

Commissioner's finding that she was not disabled and award her benefits, or remand to the

Commissioner for a new hearing.

The parties have cross-moved for judgment on the pleadings pursuant to Federal Rule of

Civil Procedure 12(c).  On April 22, 2021, Ms. Rosario filed a motion for judgment on the pleadings

(ECF No. 15 ("Ms. Rosario's Motion"), on June 23, 2021, the Commissioner cross-moved (ECF

No. 19 (the "Commissioner's Motion")), and on July 12, 2021, Ms. Rosario filed a reply.  (ECF

No. 21) (Ms. Rosario's Motion and the Commissioner's Motion, the "Motions").  For the reasons

set forth below, Ms. Rosario's Motion is DENIED and the Commissioner's Motion is GRANTED.

## II.    BACKGROUND

### A.  Procedural Background

On March 20, 2018, Ms. Rosario filed an application for SSI, initially alleging a disability

onset date of April 1, 2016, later amended to March 20, 2018.  (Administrative Record ("R.") 47,

69 (ECF Nos. 12–12-2)).  On May 18, 2018, the SSA denied Ms. Rosario's application.  (R. 47).

After Ms. Rosario requested a hearing before an ALJ, on April 2, 2019, ALJ Jack Russak

conducted a hearing (the "Hearing").  (R. 66–91).  On October 10, 2019, ALJ Russak issued his

Decision finding that Ms. Rosario was not disabled under the Act.  (R. 47–57).  On August 4, 2020,

the ALJ Decision became the final decision of the Commissioner when the Appeals Council denied

review.  (R. 1–6).

### B.  Factual Background

#### 1.  Non-medical evidence

Ms. Rosario was born in 1964 and lives on her own in an apartment in the Bronx.  (R. 67,

70, 240–41, 284).  She completed one year of college in 1987.  (R. 279).  From 1999 to 2005, Ms.

Rosario worked as a mail sorter for the United States Postal Service.  (R. 295; see R. 87).  More

recently, in 2016 and 2017, she worked as a package handler, a babysitter, and in retail.  (R. 268,

279).  She has not worked since December 2017.  (R. 278).

In a function report dated April 22, 2018 (the "Function Report"), Ms. Rosario detailed

her activities and limitations.  (R. 284–91).  Ms. Rosario described daily activities including

watching television and listening to music, preparing meals and cleaning, and speaking by phone

with her son, who was institutionalized.  (R. 74–77, 284, 286, 288).  Ms. Rosario's daughter assisted with shopping, cooking, and household tasks (R. 70, 75–76, 286).  Ms. Rosario stated that she "rarely" went outside, although she could travel on public transportation by herself.  (R. 287).

Ms. Rosario described having no memory problems, but difficulty focusing when reading and watching television, because she "think[s] too much about [her] problems all day long."  (R. 288, 290, 291).  She can follow spoken and written instructions, does not have problems getting along with authority figures, including work supervisors, and has not lost a job due to problems getting along with people.  (R. 291).

At the Hearing, Ms. Rosario described feeling stressed about her son.  (R. 74, 77).

### 2.  Medical evidence

Ms. Rosario summarized the evidence concerning her mental impairments "as [she] does not dispute the physical limitations found by the ALJ[,]" and the Commissioner adopted her summary, and set forth limited additional facts pertaining to Ms. Rosario's medical history.  (ECF Nos. 16 at 2–5; 20 at 9–11).  Accordingly, the Court adopts the parties' summaries of the medical evidence as accurate and complete, and summarizes below the pertinent evidence for purposes of analyzing the Motions.  (See infra § IV.A.1).

### a.  PA Kimberly Rubino

On October 5, 2018, PA Kimberly Rubino evaluated Ms. Rosario for depression and anxiety.  (R. 455–457).  Ms. Rosario reported a history of "depression for years," with nightmares "once every few months," panic attacks, poor sleep and auditory and visual hallucinations. (R. 455).  Ms. Rosario reported that she stopped taking her medications for several months.  (Id.) Ms. Rubino examined Ms. Rosario and documented that she was well groomed, had normal

speech, a depressed mood, appropriate affect, goal directed thoughts, intact cognition, and no hallucinations.  (R. 456).  Ms. Rubino diagnosed major depressive disorder and generalized anxiety disorder, recommended supportive therapy, and prescribed Lexapro (10 mg) and Mirtazapine (7.5 mg).  (R. 457).

On November 16, 2018, Ms. Rosario had a follow-up appointment and completed an Impairment Questionnaire.  (R. 454).  Based on her monthly treatment of Ms. Rosario, Ms. Rubino noted that Ms. Rosario was continuing her medications at the same dosage, and observed symptoms including depressed mood, persistent or generalized anxiety, difficulty concentrating, recurrent panic attacks, social withdrawal, excessive sleep, and hyperactivity.  (R. 451).  Ms. Rubino stated that Ms. Rosario would be unable to be around crowds in a work setting and would have anxiety while working with others, and that her symptoms and limitations had been present "for many years."  (R. 452, 454).  Ms. Rubino assessed Ms. Rosario as having no-to-mild limitations in understanding and remembering work procedures, simple or detailed instructions, and carrying out instructions; getting along with coworkers or peers, accepting instructions, and maintaining socially acceptable behavior; and responding appropriately to workplace changes. (R. 453).  Ms. Rubino assessed moderate limitations to Ms. Rosario's ability to work in coordination with or near others without being distracted.  (Id.)  Ms. Rubino assessed moderate-to-marked limitations in Ms. Rosario's abilities to maintain extended attention and concentration, complete a workday without interruption from her psychological symptoms, appropriately interact with the public, and travel to unfamiliar places on public transportation. (Id.)  Ms. Rubino noted no marked limitations.  (Id.)

On November 16, 2018, Ms. Rubino noted Ms. Rosario's "good response" to psychiatric treatment, with "ups [and] downs," and improved sleep, despite nightmares about her son (R. 458). A mental status examination noted Ms. Rosario was well-appearing, had good judgment, was alert and oriented, had coherent speech, good concentration and attention span, and no abnormal thoughts, with a sad mood. (Id.) Ms. Rosario's medications were continued at the same dosage. (Id.)

On December 14, 2018, Ms. Rubino documented a continuing "good response," to psychiatric treatment, less depression and anxiety, sleeping "much better" and feeling calmer with medication. (R. 459). Ms. Rosario appeared well, with good concentration, a sad affect, no abnormal thoughts, and coherent speech. (Id.)

On January 25, 2019, Ms. Rosario was "feeling much better," with less anxiety and depression, but sleep difficulties. (R. 468). PA Rubino noted a "euthymic" mood/affect, good attention span and concentration, coherent speech, good judgment and no abnormal or psychotic thoughts. (Id.) Ms. Rubino increased the dosage of Mirtazapine to 15 mg. (Id.)

### b. Dr. Aris Peguero – SSA Consultative Examiner

On May 2, 2018, Aris Peguero, Psy.D., performed a psychiatric evaluation of Ms. Rosario. (R. 431–36). Ms. Rosario reported taking Trazodone for anxiety, and experiencing sleep disturbances, loss of her usual interests, concentration difficulties, social withdrawal, excessive worrying, and panic attacks. (R. 432). Ms. Rosario also reported one visual hallucination of her deceased uncle and auditory hallucinations of voices asking for prayers. (R. 433). Ms. Rosario described activities including cooking and cleaning for herself, using public transportation,

socializing with her cousin monthly, interacting with others on the phone or through social media, watching television, and listening to music. (R. 434–35).

Dr. Peguero performed a mental status examination and noted that Ms. Rosario's thought process was coherent and goal directed with no evidence of hallucinations; her affect was occasionally labile; her attention, concentration and memory skills were intact; her cognitive functioning appeared average and she stated she had a depressed mood. (R. 433–34). Dr. Peguero diagnosed Ms. Rosario with unspecified depressive disorder and unspecified anxiety disorder, with a good prognosis, provided Ms. Rosario continued her treatment. (R. 435). Dr. Peguero opined that Ms. Rosario had no limitations in nearly all categories of mental aptitude, with only mild limitations in interacting appropriately with colleagues and the public, regulating emotions, controlling behavior, and maintaining well-being. (Id.)

### c. M. Juriga, Ph.D. – SSA Agency Consultant

M. Juriga, Ph.D., opined that Ms. Rosario's mental disorders were non-severe, and assessed her to have no impairments in understanding, remembering, and applying information, and only mild impairments in interacting with others, concentrating, persisting, or maintaining pace, and adapting and managing herself. (R. 96–97).

### C. Administrative Proceedings

### 1. The Hearing

Ms. Rosario testified that Ms. Rubino continued to treat her monthly, and that she was taking anxiety medication. (R. 73–74). Her sessions focused on her "worries," primarily that her son would escape from his facility. (R. 74–75). Ms. Rosario testified that she ate simple meals, no longer cooked as often as she used to, and cleaned once or twice a week, often with the

assistance of her daughter. (R. 75–76). In response to questions by her attorney, Ms. Rosario testified that she experienced insomnia, primarily stayed at home, suffered panic attacks between one and four times per month, and had diminished focus. (R. 77–79). Ms. Rosario also testified that she occasionally had auditory and visual hallucinations of people asking for prayers. (R. 80).

Vocational Expert ("VE") Charlotte Dixon testified that a hypothetical individual of the same age, education, and work experience as Ms. Rosario could perform medium level work in a low-stress job as a machine operator and fast-food worker. (R. 83–85; see R. 88). The VE testified that this hypothetical individual could be off-task 15% of an eight-hour workday and absent once monthly and remain employed. (R. 85–86).

### 2. The ALJ Decision and Appeals Council Review

On October 10, 2019, ALJ Russak issued his Decision finding Ms. Rosario not disabled and denying her application for SSI benefits. (R. 47–57). The ALJ followed the five-step disability determination process. 20 C.F.R. §416.920(a)(4)(i)–(v). At step one, ALJ Russak determined that Ms. Rosario had not engaged in substantial gainful employment since the onset date. (R. 49). At step two, the ALJ determined that she had five severe impairments: left shoulder calcific tendonitis, diabetes mellitus, hyperglycemia, major depressive disorder, and generalized anxiety disorder. (R. 49–50).

At step three, ALJ Russak determined that none of Ms. Rosario's impairments were of a severity to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 416.920(d), 416.925 and 416.926 (the "Listings"). (R. 50).

In evaluating Ms. Rosario's psychiatric disorders, the ALJ determined that the "paragraph B" and "paragraph C" criteria for listings 12.04 and 12.06 were not met because she did not have at least two "marked" limitations or one "extreme" limitation and did not present with a "serious and persistent mental disorder" of two or more years including evidence of only marginal adjustment despite ongoing persistent treatment.  (R. 50–51).  Instead, the ALJ found that Ms. Rosario had only mild or moderate limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing herself.  (Id.)  Despite a marked limitation in interacting with others, the ALJ noted that she regularly spent time with her daughter, socialized with her cousin, had no problem getting along with others or people in authority, and could take public transportation independently.  (R. 50).  The ALJ also observed that she was cooperative with appropriate eye contact and "copes by speaking to others and using her sense of humor."  (Id.)

Before moving to step four, the ALJ assessed Ms. Rosario's RFC, finding that she had the RFC to perform medium work with certain exertional limitations in a low stress environment "defined as having occasional decision[-]making required and occasional changes in the work setting; occasional judgment required on the job; no fast-paced work environments; no interaction with the public; and only occasional interaction with co-workers and supervisors."  (R. 51 ("Ms. Rosario's RFC")).  This assessment was based on a review of Ms. Rosario's medical records, including mental health treatment notes as well as her testimony at the Hearing.  (R. 52–54).  With respect to Ms. Rosario's mental impairments, the ALJ found that Ms. Rosario had a degree of functional limitation, but not to the extent she alleged.  (R. 53).  Rather, the ALJ determined that Ms. Rosario's mental health impairments were improved with medications and

treatment, and her most significant impairment—interaction with others—was addressed in her RFC, which provided for no interaction with the public and only occasional interactions with colleagues in low stress jobs.  (R. 54; see R. 51).

With respect to Ms. Rosario's psychiatric impairments, the ALJ considered the medical opinions of Dr. Peguero, Dr. Purcea, and Ms. Rubino.  (R. 53–55).  The ALJ found unpersuasive Dr. Peguero's opinion that Ms. Rosario's mental impairments were non-severe and resulted in at most mild limitations, finding it inconsistent with evidence of moderate-to-marked limitations in certain areas of mental functioning.  (R. 53–54).  The ALJ found persuasive Ms. Rubino's opinion that Ms. Rosario had "moderate-to-marked limitations in concentration and persistence, social interactions, and adaptation; and a none-to-mild limitation in understanding and memory."  (R. 54).  Although this opinion was inconsistent Ms. Rubino's examination notes, which reflected "essentially normal mental status examinations and improvement with medication," the ALJ deemed her opinion consistent with other record evidence reflected marked limitations in interacting with others, moderate limitations in concentrating, persisting, or maintaining pace and adapting or managing, and mild limitations in understanding, remembering, and applying information. (Id.)

With respect to Ms. Rosario's credibility, the ALJ determined that Ms. Rosario's statements concerning "the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (R. 52).  Among the reasons she provided, the ALJ determined that Ms. Rosarios's longitudinal treatment records did not support the intensity or persistence of her subjective allegations.  (R. 54).  Instead,

her psychiatric treatment was "extremely limited and conservative," and resulted in improvement.  (Id.)

At step four, the ALJ determined that Ms. Rosario did not have the RFC to perform past relevant work as a courier.  (R. 55).  At step five, the ALJ determined that based on Ms. Rosario's age, education, work experience, and RFC, that jobs existed in significant numbers in the national economy that she could perform, as a machine operator and food service worker.  (R. 55–56).  For these reasons, the ALJ concluded that Ms. Rosario was not disabled.  (R. 56).

On August 4, 2020, the Appeals Council denied Ms. Rosario's request for review.  (R. 1–6).

### III.   LEGAL STANDARDS

#### A.  Standard of Review

Under Rule 12(c), a party is entitled to judgment on the pleadings if she establishes that no material facts are in dispute and that she is entitled to judgment as a matter of law.  See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); Morcelo v. Barnhart, No. 01 Civ. 743 (RCC) (FM), 2003 WL 470541, at *4 (S.D.N.Y. Jan. 21, 2003).

The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."   42 U.S.C. § 405(g).  A court may set aside the Commissioner's decision denying SSI benefits if it is not supported by substantial evidence or was based on legal error.  See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009).  Judicial review, therefore, involves two levels of inquiry.  First, the Court must decide whether the ALJ applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008).  Second,

the Court must decide whether the ALJ's decision was supported by substantial evidence.  Id.  "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Longbardi v. Astrue, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal citations omitted).  The substantial evidence test applies not only to the factual findings, but also to the inferences and conclusions drawn from those facts.  See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999).  In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record, and weigh all evidence to ensure that the ALJ evaluated the claim fairly.  See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999).  The Commissioner, not the Court, resolves evidentiary conflicts and appraises the credibility of witnesses, including the claimant.  See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Disability-benefits proceedings are non-adversarial in nature, and therefore, the ALJ has an affirmative obligation to develop a complete administrative record, even when the claimant is represented by counsel.  See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009).  To this end, the ALJ must make "every reasonable effort" to help an applicant get medical reports from her medical sources.  20 C.F.R. § 416.912(b).  Ultimately, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity."  Casino-Ortiz v. Astrue, No. 06 Civ. 155 (DAB) (JCF), 2007 WL 2745704, at *7 (S.D.N.Y.

Sept. 21, 2007).   When there are inconsistencies, gaps, or ambiguities in the record, the regulations give the ALJ options to collect evidence to resolve these issues, including re-contacting the treating physician, requesting additional records, arranging for a consultative examination, or seeking information from others.  20 C.F.R. § 416.920b.

The Act authorizes the Court to order further proceedings: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Butts v. Barnhart, 388 F.3d 377, 382 (2d Cir. 2004). If "there are gaps in the administrative record or the ALJ has applied an improper legal standard," the Court may remand the case for further development of the evidence or for more specific findings.  Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  Pratts, 94 F.3d at 39.  If, however, the reviewing court concludes that an ALJ's determination to deny benefits was not supported by substantial evidence, a remand solely for calculation of benefits may be appropriate.  See, e.g., Butts, 388 F.3d at 386 (discussing Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000)).

   B.  **Eligibility for Benefits**

For purposes of SSI benefits, one is "disabled" within the meaning of the Act, and thus entitled to such benefits, when he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(3)(A).  The Act also requires that the impairment be

"of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(3)(B).  In reviewing a claim of disability, the Commissioner must consider: "(1) objective medical facts; (2) diagnoses or medical opinions based on those facts; (3) subjective evidence of pain and disability testified to by claimant and other witnesses; and (4) the claimant's background, age, and experience." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988).

Under the applicable regulations, an alleged disability is evaluated under the sequential five-step process set forth in 20 C.F.R. § 416.920(a)(4)(i)–(v).  The Second Circuit has described the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity.  If not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on the medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the Claimant could perform.

Bush v. Shalala, 94 F. 3d 40, 44–45 (2d Cir. 1996) (quoting Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof, and at the fifth step, the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy

that the claimant can perform.  See, e.g., Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).  In

meeting the burden of proof at the fifth step, the Commissioner may usually rely on the Medical-

Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, known as "the Grid."

Zorilla v. Chater, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996).

### C.  Evaluation of Medical Opinion Evidence

For benefits applications filed before March 27, 2017, the SSA's regulations required an

ALJ to give more weight to those physicians with the most significant relationship with the

claimant.  See 20 C.F.R. § 416.927; see also Taylor v. Barnhart, 117 F. App'x 139, 140 (2d Cir.

2004).  Under this "Treating Physician Rule," an ALJ was required to "give good reasons" Kevin E.

v. Comm'r of Soc. Sec., No. 1:19-CV-593 (EAW), 2021 WL 1100362, at *4 (W.D.N.Y. Mar. 23, 2021)

(quoting former 20 C.F.R. § 404.1527(c)(2)), if he or she determined that a treating physician's

opinion was not entitled to "controlling weight," or, at least, "greater weight" than the opinions

of non-treating and non-examining sources.  Gonzalez v. Apfel, 113 F. Supp. 2d 580, 588–89

(S.D.N.Y. 2000).  In addition, under the Treating Physician Rule, a consultative physician's opinion

was generally entitled to "little weight."  Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009).

On January 18, 2017, the SSA published comprehensive revisions to the regulations

regarding the evaluation of medical evidence, revisions that were applicable to applications filed

on or after March 27, 2017.  See Revisions to Rules Regarding the Evaluation of Medical Evidence,

82 F. R. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  These new regulations reflect a departure

from a perceived hierarchy of medical sources.  See id.  The regulations now provide that an ALJ

need "not defer or give any specific evidentiary weight, including controlling weight, to any

medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's]

medical sources."[1]  20 C.F.R. § 416.920c(a).  See Young, 2021 WL 4148733, at *9.  Instead, an ALJ must consider all medical opinions in the record and "evaluate the persuasiveness" based on five "factors": (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any "other" factor that "tend[s] to support or contradict a medical opinion."   20 C.F.R. § 416.920c(a)–(c)(1)–(5).

The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. § 416.1520c(a)–(b).  Under the new regulations, the ALJ must "explain," in all cases, "how [he or she] considered" both the supportability and consistency factors, as they are "the most important factors."  Id. § 416.920c(b)(2); see Young, 2021 WL 4148733, at *9 (describing supportability and consistency as "the most important" of the five factors); Amber H. v. Saul, No. 3:20-CV-490 (ATB), 2021 WL 2076219, at *4 (N.D.N.Y. May 24, 2021) (noting that the two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," the "same factors" on which the Treating Physician Rule was based); Rivera, 2020 WL 8167136, at *13 (explaining that supportability and consistency are the "most important" factors under 20 C.F.R. § 416.920c(c)).  As to supportability, "the strength of a medical opinion increases as the

---

[1] The new regulations define "prior administrative medical finding" as:

> [A] finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as: (i) The existence and severity of your impairment(s); (ii) The existence and severity of your symptoms; (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) If you are a child, statements about whether your impairment(s) functionally equals the listings in Part 404, Subpart P, Appendix 1; (v) If you are an adult, your [RFC]; (vi) Whether your impairment(s) meets the duration requirement; and (vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. § 416.913(a)(5).

relevance of the objective medical evidence and explanations presented by the medical source increase." Vellone v. Saul, No. 20 Civ. 261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)); see Rivera, 2020 WL 8167136, at *16 (noting that supportability "has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support [his or] her opinion") (quoting 20 C.F.R. § 416.920c(c)(1)). Consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." Vellone, 2021 WL 319354, at *6.

As to the three remaining factors—relationship with the claimant, specialization, and "other"—the ALJ is required to consider, but need not explicitly discuss, them in determining the persuasiveness of the opinion of a medical source. 20 C.F.R. § 416.920c(b)(2). If the ALJ finds two or more medical opinions to be equally supported and consistent with the record, but not identical, the ALJ must articulate how he or she considered those three remaining factors. See id. § 416.920c(b)(3).

Thus, "[a]lthough the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medication opinion, the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions.'" Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quoting 20 C.F.R. §§ 416.920c(a), (b)(1)). "The ALJ need not discuss all of the factors described in the regulations but must, as to each opinion or prior administrative medical finding, 'explain how [he or she] considered the supportability and consistency factors." Rivera, 2020 WL 8167136, at *14

(quoting 20 C.F.R. § 416.920c(b)(2)).  "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases [his] explanation upon a misreading of the record, remand is required."  Id. (quoting <u>Andrew G.</u>, 2020 WL 5848776, at *9)).

Several opinions among the district courts within the Second Circuit applying the new regulations have concluded that "the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar" to the former Treating Physician Rule.  <u>Acosto Cuevas v. Comm'r of Soc. Sec.</u>, No. 20 Civ. 502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (surveying district court cases in the Second Circuit considering the new regulations); <u>see</u> <u>Prieto v. Comm'r of Soc. Sec.</u>, No. 20 Civ. 3941 (RWL), 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021) (noting that under both the Treating Physician Rule and the new regulations, "an ALJ's failure to properly consider and apply the requisite factors is grounds for remand"); <u>Dany Z. v. Saul</u>, No. 2:19-CV-217 (WKS), 2021 WL 1232641, at *12 (D. Vt. Mar. 31, 2021) (surveying Second Circuit district courts that "have concluded that the factors are very similar to the analysis under the old [Treating Physician] [R]ule"); <u>Andrew G.</u>, 2020 WL 5848776, at *5 (noting that "consistency and supportability" were "the foundation of the treating source rule"); <u>see also</u> <u>Brianne S. v. Comm'r of Soc. Sec.</u>, No. 19-CV-1718 (FPG), 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (remanding to ALJ with instructions to provide explicit discussion of supportability and consistency of two medical opinions, because ALJ's "mere[] state[ment]" that examining physician's opinion was not consistent with overall medical evidence was insufficient).

**D.** <u>**Assessing a Claimant's Subjective Allegations**</u>

In considering a claimant's symptoms that allegedly limit his or her ability to work, the ALJ must first determine "whether there is an underlying medically determinable physical or mental impairment(s) — i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques — that could reasonably be expected to produce the claimant's pain or other symptoms." 20 C.F.R. § 416.929(c)(3).  If such an impairment is found, the ALJ must next evaluate the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations."  20 C.F.R. § 416.929(c)(1).

To the extent that the claimant's expressed symptoms are not substantiated by the objective medical evidence, the ALJ must evaluate the claimant's credibility.  <u>See</u> <u>Meadors v. Astrue</u>, 370 F. App'x 179, 183–84 (2d Cir. 2010); <u>Taylor v. Barnhart</u>, 83 F. App'x 347, 350–51 (2d Cir. 2003).  "An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court."  <u>Rivera v. Berryhill</u>, No. 17 Civ. 991 (JLC), 2018 WL 4328203, at *10 (S.D.N.Y. Sept. 11, 2018).  That deference is due "because the ALJ had the opportunity to observe plaintiff's demeanor while [the plaintiff was] testifying."  <u>Marquez v. Colvin</u>, No. 12 Civ. 6819 (PKC), 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013).  Thus, a district court will not "second-guess" the ALJ's credibility finding "where the ALJ identified specific record-based reasons for his ruling," <u>Stanton v. Astrue</u>, 370 F. App'x 231, 234 (2d Cir. 2010), and where the ALJ's credibility finding is supported by substantial evidence.  <u>See</u> <u>Selian v. Astrue</u>, 708 F.3d 409, 420 (2d Cir. 2013) (declining to review ALJ's credibility finding where the ALJ "set forth specific reasons why she found [the plaintiff's] testimony not credible").  If the ALJ rejects the claimant's testimony as not credible, the ALJ must

set forth the basis for that finding "with sufficient specificity to permit intelligible plenary review of the record." Williams, 859 F.2d at 260–61.  The ALJ may not base his credibility determination "on unsupported interpretations of raw medical evidence or mischaracterizations of the record." Rivera, 2020 WL 8167136, at *20.

Courts have recognized that "the second stage of [the] analysis may itself involve two parts." Sanchez v. Astrue, No. 07 Civ. 931 (DAB), 2010 WL 101501, at *14 (S.D.N.Y. Jan. 12, 2010). "First, the ALJ must decide whether objective evidence, on its own, substantiates the extent of the alleged symptoms (as opposed to the question in the first step of whether objective evidence establishes a condition that could 'reasonably be expected' to produce such symptoms)." Id. "Second, if it does not, the ALJ must gauge a claimant's credibility regarding the alleged symptoms by reference to the seven factors listed [in 20 C.F.R. § 416.929(c)(3)]." Id. (citing Gittens v. Astrue, No. 07 Civ. 1397 (GAY), 2008 WL 2787723, at *5 (S.D.N.Y. June 23, 2008)). These seven factors include:  (1) an individual's daily activities; (2) the location, duration, frequency and intensity of pain or other symptoms; (3) factors that precipitate and aggravate those symptoms; (4) the type, dosage, effectiveness, and side effects of medication that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual receives or has received for pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See Bush, 94 F.3d at 46 n.4; 20 C.F.R. § 416.929(c)(3).  If the ALJ does not follow these steps, remand is appropriate. Sanchez, 2010 WL 101501, at *15.

### IV.      DISCUSSION

**A.  Evaluation of the Medical Opinion Evidence and RFC Determination**

**1.  Analysis**

The Court finds that the ALJ correctly applied the new regulations and sufficiently explained how he evaluated the medical opinions he considered, particularly the supportability and consistency factors.  Accordingly, the RFC determination was supported by substantial evidence.

As two threshold matters, the Court first notes that the ALJ found part of Ms. Rubino's opinion to be persuasive, and incorporated that opinion, including its asserted limitations, into the RFC.  (R. 54).  Thus, Ms. Rosario has not shown any prejudicial effect from a purported improper evaluation of the opinion evidence.  Second, the Court emphasizes that Ms. Rubino is a physician's assistant, not a psychiatrist.  (Compare ECF No. 16 at 12 (referring to the "treating psychiatrist"); 13 ("this specialist, a psychiatrist"); 9 ("treating psychiatrist physician assistant Rubino")).  Effective March 27, 2017, physician assistants are acceptable medical sources, 20 C.F.R. § 416.902(a)(8)), but Ms. Rosario misstates the evidence in labeling Ms. Rubino a psychiatrist.

Turning to the ALJ Decision, the Court finds that ALJ Russak carefully considered the record in determining Ms. Rosario's RFC, and that the ALJ's analysis of the supportability and consistency of Ms. Rubino's opinion was legally adequate, and based on his assessment of the record as a whole.  In evaluating Ms. Rubino's opinion, the ALJ considered Ms. Rosario's treatment records, which "reflect essentially normal mental status examinations and improvement with medication."  (R. 54) (citing R. 455–67; R. 468–71).  The Court concurs in this

assessment.  Ms. Rubino's records span four months—from October 5, 2018 until January 25, 2019—and reflect Ms. Rosario's improvement with treatment.  (R. 450–59, 468–71; see supra § II.B.2).  Throughout her treatment sessions with Ms. Rosario, Ms. Rubino recorded "essentially normal mental status examinations and improvement with medication."  (R. 54; see R. 455–56, 458–59, 468, 470).

Moreover, by analyzing Ms. Rubino's underlying treatment records against her opinion, and finding an incongruity, the ALJ's analysis satisfies the supportability factor.  Compare Davis v. Comm'r of Soc. Sec., No. 20 Civ. 5773 (SDA), 2021 WL 5826369, *10 (S.D.N.Y. Dec. 8, 2021) (holding that the ALJ properly evaluated opinion evidence in considering that treating source's notes provided "'few details of his clinical observations,' and thus, there were no clinical findings to corroborate [his] opinion")with Rua-Campusano v. Kijakazi, No. 20 Civ. 7087 (GBD) (SLC), 2021 WL 7287628, at *13 (S.D.N.Y. Dec. 10, 2021) (ordering remand where an ALJ's "brief, categorical dismissal" of opinion evidence without discussing supportability or persuasiveness was insufficient), adopted by 2022 WL 493390 (S.D.N.Y. Feb. 17, 2022).

The ALJ also deemed the consistency of Ms. Rubino's opinion with the longitudinal record an additional basis to find her opinion was persuasive, in accordance with applicable regulations. (R. 54).  See 20 C.F.R. § 416.920c(a).  The ALJ found that Ms. Rosario had marked limitations in interacting with others, and moderate limitations in concentrating, persisting, or maintaining pace; and adapting and managing herself.  (R. 50–51).  Underlying these findings, the ALJ weighed Ms. Rosario's statements in the Function Report and her Hearing testimony, including that she "rarely goes outside," has difficulty sleeping, loss of appetite, panic attacks and reports seeing and hearing things, against consultative findings that she had an intact memory and cognitive

abilities.  (Id.) (citing R. 66–91, 284–91, 431–36); see DeJesus v. Comm'r of Soc. Sec., No. 20 Civ. 6815 (KHP), 2021 WL 5829766, at *11 (S.D.N.Y. Dec. 8, 2021) ("Importantly, the ALJ did not ignore but rather acknowledged symptoms such as anxiety in crowds, night sweats, isolation period, and sleep disturbances, but nevertheless found that these were not so disabling as to preclude Plaintiff from working with appropriate limitations.").

Ms. Rosario's contrary arguments are unpersuasive.  First, Ms. Rosario's argument that her medical records showed only "an iota of temporary improvement," (ECF No. 16 at 12), is unsupported by her treatment records.  (See supra § II.B.2).  While Ms. Rosario suggests that "individuals with mental impairments may have cycles of improvement followed by exacerbations of symptoms" — a well-accepted proposition, see Colgan v. Kijakazi, 22 F.4th 353, 362 (2d Cir. 2022) — she has not identified any subsequent documented periods of exacerbations of her symptoms that the ALJ overlooked.  (ECF No. 16 at 13).

Second, Ms. Rosario's related argument that the ALJ "did not cite to any specific medical facts nor even persuasive non-medical evidence that supports the mental RFC" is incorrect, and misreads the ALJ Decision.  (ECF No. 16 at 14).  The ALJ considered appropriate medical and nonmedical evidence.  (See R. 52–55).  In evaluating Ms. Rosario's RFC, the ALJ appropriately considered records of her medical treatment as well as other medical records, and her subjective complaints.  (See R. 47–57); see also 20 C.F.R. §§ 416.913(a) (listing the categories of evidence as "objective medical evidence"; "medical opinion[s]"; "other medical evidence"; evidence from nonmedical sources; and "prior administrative medical finding[s]"); 416.920c(d) (stating that the ALJ is "not required to articulate how [he or she] considered evidence from nonmedical sources" in the same manner as medical opinions and prior administrative medical findings).

Third, Ms. Rosario's argument that the ALJ failed to properly evaluate her subjective complaints also fails.  "An ALJ may exercise discretion in weighing . . . the claimant's testimony in light of the other evidence in the record."  DeJesus, 2021 WL 5829766, at *12 (finding no error in evaluation of claimant's subjective complaints, where the ALJ considered mental status examinations, treatment records, a consultative examination and "the efficacy of medications in treating Plaintiff's symptoms") (internal citation omitted); see Garces v. Comm'r of Soc. Sec., No. 19 Civ. 10732 (DF), 2021 WL 1178003, at *33 (S.D.N.Y. March 29, 2021) ("Factors that are relevant to a claimant's subjective complaints of limitations include the type, dosage, effectiveness, and side effects of any medications taken to alleviate pain and other symptoms") (cleaned up).  Here, the ALJ acknowledged Ms. Rosario's reports of depression- and anxiety-related symptoms, but ultimately deemed them not entirely consistent with the records of her medical treatment and opinion evidence.  (R. 53–54).  This analysis was legally sufficient.  See Whipple v. Astrue, 479 F. App'x 367, 370–71 (2d Cir. 2012) (affirming ALJ's credibility determination that compared claimant's statements against a "wealth of conflicting evidence" of his ability to work).

Finally, the Court notes that in determining the RFC, the ALJ properly considered Ms. Rosario's regular daily activities.  (R. 53–54); see Cepeda v. Comm'r of Soc. Sec., No. 19 Civ. 4936 (BMC), 2020 WL 6895256, at *12 (S.D.N.Y. Nov. 24, 2020).  The ALJ correctly found that Ms. Rosario's statements and actions, including taking public transportation, socializing with her cousin monthly, keeping in contact with her children, watching television, and using social media are consistent with the ALJ's RFC determination that she could perform low stress work, with occasional decision making, no interaction with the public, and only occasional interaction with co-workers and supervisors.  (R. 51–54).

As set forth above, this Court's review of the ALJ Decision "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian, 708 F.3d at 417.   Under this substantial evidence standard, "once an ALJ finds facts, [the court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" Herrera v. Comm'r of Soc. Sec., No. 20 Civ. 7910 (KHP), 2021 WL 4909955, at *9–10 (S.D.N.Y. Oct. 21, 2021) (quoting Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (holding that substantial evidence supported the ALJ's RFC assessment where the ALJ "grappled with inconsistent records," noted and discussed conflicting evidence, including objective tests, the claimant's statements, "and arrived at a decision based on the record as a whole.").   The ALJ's Decision was based on the correct legal standard, that is, 20 C.F.R. § 416.920c(a).   The ALJ based his RFC determination on Ms. Rosario's subjective complaints and testimony, her mental health treatment history, daily activities, as well as the medical opinion evidence, and incorporated the key portions of this evidence into the RFC.   (See R. 47–57).   The RFC was therefore supported by substantial evidence. See Knief v. Comm'r of Soc. Sec., No. 20 Civ. 6242 (PED), 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y. Nov. 22, 2021) (affirming ALJ decision which concluded, after evaluating treatment records and mental status examinations that claimant had "meaningful, but not profound, mental restrictions" with chronic anxiety and mood disturbances, treated with regular psychiatric appointments and psychiatric medications).

Although there may be some evidence in the record that would support a contrary RFC determination, it is not for this Court to "reweigh th[e] evidence or substitute its judgment for that of the ALJ where," as here, "the evidence is susceptible of more than [one] interpretation."

Rivera v. Comm'r of Soc. Sec., 368 F. Supp. 3d 626, 642 (S.D.N.Y. 2019).  Rather, "once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would <u>have to conclude otherwise</u>." <u>Brault</u>, 683 F.3d at 448 (internal citation omitted).  Accordingly, "this Court cannot say that no reasonable factfinder could have reached the ALJ's conclusions about [the plaintiff's] RFC . . . . Thus, this Court must affirm the findings." <u>Herrera</u>, 2021 WL 4909955, at *11 (citing <u>Brault</u>, 683 F.3d at 448; <u>Jones v. Sullivan</u>, 949 F.2d 57, 59 (2d Cir. 1991)).  The Court therefore finds that the RFC is supported by substantial evidence and consistent with the Record. <u>See</u> <u>Cepeda</u>, 2020 WL 6895256, at *12 (affirming RFC determination concerning claimant's major depressive disorder and anxiety after the ALJ considered claimant's statements about his symptoms, treatment history—including mental status exams, daily activities, and medical source statements, among other evidence).

## V.    <u>CONCLUSION</u>

For the reasons set forth above, Ms. Rosario's Motion (ECF No. 15) is DENIED and the Commissioner's Motion (ECF No. 19) is GRANTED.

The Clerk of Court is respectfully directed to close ECF Nos. 15 and 19, and close this case.

Dated:      New York, New York
            March 18, 2022

_____
SARAH L. CAVE
United States Magistrate Judge